[Civ. No. 31071. Fourth Dist., Div. One. Dec. 23, 1983.]

J. L. BAKER et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO BEST BUILDERS, INC., Real Party in Interest.

**COUNSEL**

Wilson, Yale & Shoberg, Eugene P. Yale and David A. Niddrie for Petitioners.

No appearance for Respondent.

John C. Edwards for Real Party in Interest.

**OPINION**

**WIENER, J.**—J. L. and Fritz Baker and Rhonda Sanderlin (collectively, the Bakers) seek a writ of mandate to compel the Superior Court of San Diego County to vacate its order granting partial summary judgment against them in favor of San Diego Best Builders, Inc. (Best) on the third, fourth and fifth causes of action of their cross-complaint against Best, Robert Chatham and James Williams. (*Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 894 [157 Cal.Rptr. 693, 598 P.2d 854]; *Field Research Corp.* v. *Superior Court* (1969) 71 Cal.2d 110, 111-112 [77 Cal.Rptr. 243, 453 P.2d 747].) Best obtained the partial summary judgment on the ground the Bakers, by obtaining a prejudgment writ of attachment, elected to pursue a contract remedy under their first cause of action and thus were barred from further pursuing tort remedies under their third, fourth and fifth causes of action. Best did not challenge the Bakers' second cause of action. For the reasons set forth below, we conclude the court's grant of summary judgment was improper and consequently direct the court to enter an order denying summary judgment.

### Factual and Procedural Background

In August 1977 the Bakers entered into a contract with Best to remodel and add an additional unit to their duplex for slightly under $100,000. Chatham and Williams, Best's president and vice president, promised the Bakers the project would be completed within six months in a competent manner. Sixteen months later Best had withdrawn approximately 90 percent of the Bakers' construction funds but had completed less than 70 percent of the project. Much of the work Best managed to complete was allegedly shoddy and defective.

After being discharged from the project Best filed an action to foreclose its mechanic's lien; the Bakers cross-complained alleging five causes of

action. Their first cause of action against Best for breach of contract alleges Best "wholly failed to perform" the remodeling contract. Their fourth and fifth causes of action against Best for intentional and negligent infliction of emotional distress are grounded on Best's "outrageous and flagrant conduct in not completing the rental units by the specified completion date." The third cause of action for fraud in the inducement alleges Best, Chatham and Williams fraudulently induced them to enter into the remodeling contract by falsely promising "that the rental units would be constructed in a good and workmanlike manner within six months and at the agreed price." The Bakers seek compensatory damages under the first and third causes of action, general damages and medical expenses under the fourth and fifth causes of action and punitive damages under the third and fourth causes of action.

Several days before trial the Bakers applied for a right to attach order and a writ of attachment against Best (Code Civ. Proc., § 484.010)[1] and a corresponding temporary protective order. (§ 486.010.) The court issued the protective order (§ 486.050, subd. (a)) and later denied Best's ex parte application, opposed by the Bakers, to vacate the order. (§ 486.100.) The Bakers then filed papers in support of their attachment application. (See § 484.030.) Best filed opposing papers (§ 484.060, subd. (a)) in which it conceded an attachment was proper but contested the amount and items of property to be attached. The court issued a right to attach order and ordered the issuance of a writ of attachment (§ 484.090, subds. (a) and (b)) against certain real property of Best. Three months later Best, Chatham and Williams moved for partial summary judgment[2] on election of remedies grounds.[3] (§ 437c, subd. (f).)

### Discussion

■   "Broadly speaking, election of remedies is the act of choosing between two or more concurrent but inconsistent remedies based upon the same state of facts. Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial prior to judgment. [Citations.] However, if a plaintiff has unequivocally and knowledgeably elected to proceed on one of the remedies he is pursuing, he may be barred recourse to the other. [Citation.]" (*Roam* v. *Koop* (1974)

---

[1]All statutory references are to the Code of Civil Procedure.

[2]Best, Chatham and Williams all joined in the motion, no doubt because Chatham and Williams were included as cross-defendants along with Best in the Bakers' third cause of action. Although the record is somewhat ambiguous, the motion apparently was granted only as to Best.

[3]These procedural details are unimportant to our holding. They are mentioned solely to lay the groundwork for our concern with when the defense of election of remedies should be asserted in the context of attachments. (See fn. 5, *post.*)

41 Cal.App.3d 1035, 1039 [116 Cal.Rptr. 539]; see also 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 112.) ■ "The doctrine of election of remedies is but a specific application of the doctrine of equitable estoppel. [Citations.] The doctrine rests on the rationale that when plaintiff has pursued a remedy which is inconsistent with an alternative remedy and thereby causes the defendant substantial prejudice, plaintiff should be estopped from pursuing the alternative remedy." (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 137 [135 Cal.Rptr. 802].)

Courts and commentators have long recognized the harshness of the election of remedies doctrine and have for some time looked upon it with disfavor. (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.*, *supra*, 66 Cal.App.3d at p. 138, and authorities cited; 2 Witkin, Cal. Procedure, *supra*, Actions, § 113, and authorities cited.) To mitigate the doctrine's effects, courts over the years have devised various ways of narrowing its application. ■ Originally one could be held to an election of remedies by actions taken before filing suit, or by the act itself of filing suit. (2 Witkin, Cal. Procedure, *supra*, Actions, §§ 116-117.) Forty to forty-five years ago California courts adopted a more modern approach, which viewed the doctrine as based on equitable principles of estoppel. (*Id.*, at §§ 113, 119.) Under this approach, a plaintiff will not be held to have elected between remedies unless he affirmatively pursues a particular remedy to defendant's disadvantage. (*Id.*, at §§ 119-123, 128.) Even then, defendant will lose his election of remedies defense if he fails to raise it in a timely manner. (*Roam* v. *Koop*, *supra*, 41 Cal.App.3d at pp. 1041-1045.) Other miscellaneous exceptions have also developed to limit the doctrine's applicability. (2 Witkin, Cal. Procedure, *supra*, Actions, §§ 124-127, 129.) The net effect of these developments has been to establish a trend in the law toward the ever greater restriction of the election of remedies doctrine.

■ One limitation on the doctrine applicable in this case is the requirement that the plaintiff seek inconsistent remedies in causes of action based on the same set of facts. (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.*, *supra*, 66 Cal.App.3d at p. 136; *Roam* v. *Koop*, *supra*, 41 Cal.App.3d at p. 1039; 2 Witkin, Cal. Procedure, *supra*, Actions, § 112, p. 981.) In *Glendale Federal* defendant developers argued plaintiff's obtaining a prejudgment writ of attachment on a breach of contract cause of action barred it from recovering damages for fraud in the inducement of the contract. (66 Cal.App.3d at pp. 135-136.) The *Glendale Federal* court rejected the defendants' argument: "Here, as in *Symcox* [v. *Zuk* (1963) 221 Cal.App.2d 383, 391 (34 Cal.Rptr. 462)], the cause of action for fraud was not inconsistent with the remedy for breach of contract and the operative facts giving rise to each cause of action are different. The contract cause of action was for breach of the agreement guaranteeing completion of the Win-

dow Hill improvements whereas the fraud cause of action was based on the false promise on behalf of Marina View that the loan funds would be expended solely for the Window Hill offsites. Thus, each cause of action arose out of different obligations and different operative facts." (66 Cal.App.3d at p. 137.) In like manner, the Bakers' fraud in the inducement and breach of contract causes of action arise out of different obligations and different operative facts. Best, Chatham and Williams were obliged to deal honestly with the Bakers and to perform their contract with them. The fraud in the inducement of the remodeling contract allegedly perpetrated by Best, Chatham and Williams and Best's later breach violated those separate obligations and also involved separate acts at different points in time. Consequently, the court below erroneously applied the election of remedies doctrine against the Bakers' third cause of action. As a result of that error, the court improperly granted summary judgment against the Bakers on that cause of action.

■ As for the Bakers' first, fourth and fifth causes of action, we cannot determine from the record whether those actions are based on the same or different facts. To prevail on a summary judgment motion, it is defendant's burden to state a complete defense as a matter of law. (§ 437c, subds. (a) and (c); *LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].) Best failed to meet its burden here by showing the Bakers' first, fourth and fifth causes of action are based on the same set of facts. We also note the moving papers filed by Best, Chatham and Williams do not even mention, much less establish, any prejudice resulting from the Bakers' attachment.[4] In light of these omissions, the court improperly granted summary judgment against the Bakers on their fourth and fifth causes of action. (*Ibid.*)

■ Consistent with the trend in the law noted above, we add an alternative ground for our holding with respect to the Bakers' fourth and fifth causes of action. The Legislature has determined attachments may properly

---

[4]Even if we look to the declarations filed in connection with the attachment itself, summary judgment still was improper. Chatham, in a declaration supporting Best's ex parte application to vacate the Bakers' temporary protective order (§ 486.100), stated: "That the financial health of [Best] is in danger from the restrain of sale [*sic*] of real properties ordered by the Court. [¶] [Best] utilizes the purchase, trade, and sale of properties as a major sources of income [*sic*] and financial collateral. [¶] Properties are bought, developed and sold as a major part of corporate income and has always been [*sic*] in the normal course of doing business. . . . [¶] . . . [T]he existence of the [temporary protective] order itself could cause irreparable harm to [Best], far in excess of the $7500.00 undertaking posted by cross-complainants." However, in a responding declaration supported by deposition extracts, the Bakers' attorney points out Chatham testified in January 1980 that Best was engaged in the construction business with approximately 40 jobs in progress at that time, that the only real property Best has ever owned is its corporate office and that the only interest in real property Best has ever transferred is a limited partnership interest in some townhouses. This showing by the Bakers was sufficient to create a triable issue of fact regarding whether their attachment substantially prejudiced Best.

issue only to secure anticipated recoveries on contract claims in fixed or readily ascertainable amounts. (§ 483.010, subds. (a) and (b).) By necessary implication, attachments generally are unavailable on tort claims due to their unascertainable value. It does not automatically follow, however, that where contract and tort causes of action are joined the creditor loses his right to attach. Attachment should always be available to secure liquidated contract claims seeking damages completely separate from those sought under a tort claim even when the claims are based on some common facts. Here, the medical expenses and damages for emotional distress claimed by the Bakers in their fourth and fifth causes of action are separate and distinct from the contract damages requested in their first cause of action. Accordingly, the writ of attachment could properly issue under the first cause of action. This approach is consistent with the result reached, if not the reasoning expressed, in *Symcox* v. *Zuk, supra,* 221 Cal.App.2d at pages 387-388, 391 (attachment allowed on contract claim seeking damages distinct from those sought under tort claim based on different facts). Consequently, for this additional reason, the court improperly granted summary judgment against the Bakers on their fourth and fifth causes of action.

### Disposition

Let a peremptory writ of mandate issue directing the court to vacate its order granting summary judgment against the Bakers on their third, fourth and fifth causes of action, and to enter a new order denying summary judgment.[5]

Brown (Gerald), P. J., and Work, J., concurred.

---

[5]In light of our disposition, it becomes unnecessary to resolve the issue of when the defense of election of remedies should be asserted in the context of attachments. If such a rule were to be established, however, we believe defendants should be required to raise any election of remedies defense as one of their grounds for opposing plaintiffs' attachments *in the first instance*. (§ 484.060, subd. (a); see also §§ 485.240, subd. (b), 486.100.) Failure to do so would later preclude defendants from asserting that defense (see § 484.060, subd. (a)) in the absence of changed circumstances. (Cf. § 482.100, subd. (a).) We also stress that even where a court determines an election of remedies defense is applicable, it should issue the right to attach order conditionally, giving the *plaintiff* the choice of electing between the writ of attachment and pursuing inconsistent remedies. These changes would reduce the possibility of procedural sandbagging which may result in depriving a plaintiff of his preferred remedy.