[No. 69953. Second Dist., Div. Seven. Nov. 18, 1985.]

MARY-MARGARET HUMES, Plaintiff and Respondent, v.
MARGIL VENTURES, INC., et al., Defendants and Appellants.

**COUNSEL**

Gilbert A. Cabot, in pro. per., and Richard Schulenberg for Defendants and Appellants.

Johnsen, Manfredi & Thorpe, Douglas L. Thorpe, Dreisen, Kassoy & Freiberg and Linda L. Northrup for Plaintiff and Respondent.

**OPINION**

**LILLIE, P. J.**—This is an appeal from judgment confirming a determination of the Labor Commissioner.

## I

### FACTS

In 1978, Mary-Margaret Humes, an actress, and Gilbert A. Cabot entered into an oral agreement whereby Cabot would act as personal manager for Humes. In 1980, Humes and Cabot formed a theatrical production company, MarGil Ventures, Inc., for the purpose of developing and advancing Humes' professional acting career. Humes entered into a written exclusive employment agreement with MarGil. The relationship between Humes and Cabot deteriorated, and, in May 1981, Humes brought an action against Cabot and MarGil in superior court (No. C366499) seeking involuntary dissolution of the corporation, removal of Cabot as director, rescission of the written employment agreement, accounting, and damages for fraud. Ca-

bot and MarGil cross-complained against Humes. Various motions were brought, and extensive discovery conducted.

With the superior court action still pending, Humes filed a petition to determine controversy under Labor Code section 1700.44 on August 26, 1981, with the California Labor Commissioner, alleging that Cabot and MarGil acted on her behalf in the capacity of "talent agency" without being duly licensed as such as required by Labor Code section 1700.5. She sought a determination that Cabot and MarGil violated the talent agencies act by procuring employment for her and negotiating contracts, that the oral and written employment agreements were illegal, void and contrary to public policy, and that Cabot and MarGil are thus liable to her for commissions received by them from her or as a result of work performed by her as an artist.

On October 28, 1981, the motion for withdrawal by Cabot and MarGil's attorneys of record was granted; Cabot did not retain new counsel. On November 6, Cabot was arrested for violation of probation concerning an unrelated criminal conviction, and remained incarcerated until August 1984.

Hearing on the petition before the Labor Commissioner was originally set for January 20, 1982, then reset for March 17, 1982, at Cabot's request. After receiving notice of the March hearing date, Cabot wrote to the hearing officer explaining that he was incarcerated and unable to appear, although he wanted to appear and present a defense. The hearing was held in Cabot's absence; no appearance was made on his behalf or on behalf of MarGil. Findings adverse to Cabot and MarGil were made regarding their actions as unlicensed talent agencies; the employment contract was declared void, and Cabot and MarGil were ordered to return to Humes the sum of $30,000.

Cabot was still incarcerated when he received notice of this determination; he wrote to the Labor Commissioner complaining of the unfairness of the determination, as it was rendered after a hearing he could not attend, without any appearance made on his behalf, and in disregard of his request for a delay. In January 1983, nine months later, Humes filed a petition in superior court seeking confirmation of the Labor Commissioner's determination and notice of hearing on the petition. Appellant, still incarcerated, wrote a lengthy sworn statement to the trial court setting forth the events which led to his inability to be heard at the hearing before the Labor Commissioner and asking for a stay of proceedings. Hearing on the petition to confirm was had in Cabot's absence, with no appearance on his behalf or on behalf of MarGil. The petition was granted and the determination of the Labor Commissioner was confirmed. Cabot and MarGil appeal from the judgment entered thereon.

## II

### APPEAL BY MARGIL

■ Cabot filed notice of appeal individually and on behalf of MarGil. However, in its opening brief, MarGil makes no assignment of error, explaining that inasmuch as it is owned 50 percent by Cabot and 50 percent by Humes, it has determined it must maintain neutrality. MarGil reasons that if it should take a position in favor of Cabot, as he urges, Humes as 50 percent shareholder would certainly vote against such action. A point not presented in a party's opening brief is deemed to have been abandoned or waived. (*Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 858-859, fn. 13 [176 Cal.Rptr. 239]; *Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].) No errors at all are claimed by MarGil in its "neutral" opening brief, and thus any potential claims are deemed waived and the judgment as to MarGil is affirmed.

## III

### ELECTION OF REMEDIES

■ Appellant Cabot's first contention is that respondent made an irrevocable election of remedies by initially bringing her action (No. C366499) in superior court, and was thus estopped from subsequently filing a petition for determination by the Labor Commissioner based upon the same facts. ■ "Broadly speaking, election of remedies is the act of choosing between two or more concurrent but inconsistent remedies based upon the same state of facts." (*Roam* v. *Koop* (1974) 41 Cal.App.3d 1035, 1039 [116 Cal.Rptr. 539].) "The doctrine rests on the rationale that when plaintiff has pursued a remedy which is inconsistent with an alternative remedy and thereby causes the defendant substantial prejudice, plaintiff should be estopped from pursuing the alternative remedy." (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 137 [135 Cal.Rptr. 802].) ■ "Courts and commentators have long recognized the harshness of the election of remedies doctrine and have for some time looked upon it with disfavor. [Citations.] To mitigate the doctrine's effects, courts over the years have devised various ways of narrowing its application." (*Baker* v. *Superior Court* (1983) 150 Cal.App.3d 140, 145 [197 Cal.Rptr. 480].)

One such limitation applicable in this case is the requirement that plaintiff seek remedies which are inconsistent in causes of action based on the same set of facts. (*Baker* v. *Superior Court, supra,* 150 Cal.App.3d 140, 145.)

Here, in the superior court case, in addition to seeking dissolution of the corporation, removal of appellant as a corporate officer and an accounting, which causes of action are wholly unrelated to her claim before the Labor Commissioner, respondent sought rescission of the employment agreement based on appellant's fraud, duress and undue influence in getting her to sign it; in the petition before the Labor Commissioner, respondent sought to have the employment agreement voided based on appellant's conduct as a talent agency in violation of the Labor Code licensing requirements. The remedies sought are not inconsistent—in both actions respondent sought to have the employment agreement declared unenforceable, either by rescission based on fraud in the inducement, or because it was void as violative of Labor Code section 1700.5. Moreover, the superior court action insofar as it sought rescission was based on facts surrounding the execution of the agreement; the action before the Labor Commissioner was based on appellant's actions under the agreement after it was executed. The remedies are not inconsistent, nor are the operative facts giving rise to each cause of action the same.

Not only was respondent permitted to petition the Labor Commissioner for determination as to the alleged violation of the talent agency licensing requirement, she was obligated by the doctrine of exhaustion of remedies to seek determination by the Labor Commissioner before taking any judicial action. ■ "[I]f an administrative remedy is provided by statute or ordinance, a litigant must show that he invoked and exhausted the remedy before he may obtain judicial review of the administrative action taken. [Citations.] It is also true that his exhaustion of the administrative remedy is ordinarily treated as a jurisdictional prerequisite, not as a matter of judicial discretion. [Citations.]" (*Environmental Law Fund* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105, 111 [122 Cal.Rptr. 288].)

■ Respondent's claim before the Labor Commissioner was that appellant had acted in the capacity of a talent agency without being licensed as such as required by Labor Code section 1700.5. Section 1700.44 of the Labor Code provides: "In cases of controversy arising under this chapter the parties involved shall refer the matters in dispute to the Labor Commissioner, who shall hear and determine the same, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo." ■ Section 1700.44 is mandatory; as to a controversy such as this one arising under the artists' managers act, the Labor Commissioner has original jurisdiction to hear and determine the same to the exclusion of the superior court, subject to an appeal to the superior court within 10 days after determination. (*Buchwald* v. *Superior Court* (1967) 254 Cal.App.2d 347, 358-359 [62 Cal.Rptr. 364].) ■ Respondent had an administrative remedy which she was required to pursue regarding the al-

leged violation of the Labor Code. Had she sought relief in superior court for this violation without first referring the claim to the Labor Commissioner and securing a determination by such official, it would have been premature and could not have been maintained. (*Collier & Wallis, Ltd.* v. *Astor* (1937) 9 Cal.2d 202, 206 [70 P.2d 171]; *Buchwald* v. *Superior Court, supra,* 254 Cal.App.2d 347, 359-360.) The controversy was properly and necessarily brought before the Labor Commissioner for determination.

IV

RIGHT TO BE HEARD

■ The meatier question raised by this appeal is whether appellant was improperly denied his right to be heard in the controversy before the Labor Commissioner. Labor Code section 1700.44, the portion of the artists' manager's act which provides for hearing and determination of controversies by the Labor Commissioner, is derivative of and identical to previous Labor Code section 1647, which was a part of the Private Employment Agencies Law. ■ It is an oft-quoted principle of statutory construction that " ' " " 'where legislation is framed in the language of an earlier enactment on the same or an analogous subject which has been judicially construed, there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment. . . .' " ' " [Citations.]" (*Buchwald* v. *Katz* (1972) 8 Cal.3d 493, 502 [105 Cal.Rptr. 368, 503 P.2d 1376].) The provision of section 1647 that the Labor Commissioner "shall hear and determine" controversies between employment agencies and applicants has been held to imply the condition precedent that both parties shall be given reasonable notice and the opportunity to be heard. (*Bess* v. *Park* (1956) 144 Cal.App.2d 798, 803 [301 P.2d 978].) We construe the identical language of section 1700.44 to insure the same rights to notice and hearing in proceedings before the Labor Commissioner.

■ In addition, the provisions of Code of Civil Procedure sections 1280 to 1294.2 relating to arbitration have been held applicable to disputes submitted to the Labor Commissioner. (*Robinson* v. *Superior Court* (1950) 35 Cal.2d 379, 387 [218 P.2d 10]; *Buchwald* v. *Superior Court, supra,* 254 Cal.App.2d 347, 358.) Section 1282.2, subdivision (d) provides that the parties to the arbitration are entitled to be heard, to present evidence, and to cross-examine witnesses appearing at the hearing; appellant was entitled to these same rights in the proceeding before the Labor Commissioner.

■ That hearing was originally scheduled for January 20, 1982; appellant notified the hearing officer that he would be unavailable until after March 1, and asked that the hearing be reset for some time after that date;

he gave no reason for his unavailability. The hearing officer continued the hearing until March 17. After receiving notice of the new date, appellant wrote a letter to the hearing officer explaining that he was incarcerated on an unrelated matter "[a]nd for sure, I doubt that I will be free to attend your Hearing on March 17, 1982." The letter continued: "Mr. Cadell, I want to appear before you, and whenever that can be, I will bring forth over a dozen studio executives, casting directors and other industry people who will substantiate my manner of operation and confirm my referral to Ms. Humes' and/or MarGil's agents whenever we were facing a true negotiative situation. I never, as an 'individual' or a 'corporate officer' acted as an agent, nor did MarGil Ventures, Inc. perform as a theatrical agency." It was clear from this communication that appellant contested the matter to be heard, wished to attend the hearing in order to present a defense, and would be unable to attend on the scheduled date because he was incarcerated in state prison. As appellant asserts, this letter in essence requested a delay.

The powers of an arbitrator, which are shared by the Labor Commissioner (*Robinson* v. *Superior Court, supra,* 35 Cal.2d 379, 387), include the power to postpone a hearing on the request of a party, for good cause, or upon his own determination. (Code Civ. Proc., § 1282.2, subd. (b).) Appellant requested a postponement until he could attend the hearing; his total inability to attend on the scheduled date because of his incarceration may well have satisfied the "good cause" requirement of the statute. Yet the hearing officer made no response to this request and held the hearing on the scheduled date in appellant's absence and with no one appearing on appellant's behalf, thereby denying appellant his opportunity to be heard, to present evidence, and to cross-examine witnesses. It was not surprising that the determination of the hearing officer under these circumstances was completely adverse to appellant.

V

GROUNDS TO VACATE THE AWARD

■ Under the rules governing arbitration awards, any party to a Labor Commissioner determination may petition the superior court to confirm, correct or vacate the award. (Code Civ. Proc., § 1285.) The grounds for vacation of an award are limited; as pertinent to the facts before us, "the court shall vacate the award if the court determines that: . . . [t]he rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." (Code Civ. Proc., § 1286.2, subd. (e).)

The court may not vacate an award unless a petition or response requesting that the award be vacated has been duly served and filed. (Code Civ. Proc., § 1286.4); the petition or response must set forth the grounds on which the request for such relief is based. (Code Civ. Proc., § 1285.8.) In this case, respondent filed a petition to confirm the determination of the Labor Commissioner; appellant, still incarcerated, was served with the petition and notice that hearing on the petition was set for February 15, 1983, in department 82 of the superior court. Appellant then wrote a seven-page sworn statement to the judge in department 82; he asked the court to accept the statement as a response, since he was incarcerated, the prison law library did not have the appropriate civil reference materials to enable him to file a more formal response, and he did not have an attorney. This letter, which we deem a response filed with the court, was duly served on respondent by mail.

In it, appellant brought to the court's attention the scheduling of the Labor Commissioner's hearing while he was incarcerated and thus unable to appear, and his inability to retain counsel for that hearing because of his limited access to files and records, limited phone calls, and the complex issues which would have made it difficult for counsel to enter the case on short notice. He attached and incorporated his February 8, 1982 letter to the hearing officer, in which he sought a delay of the hearing, noted there was no reply to that letter, and that the hearing proceeded on the date set, resulting in a determination against him without his having an opportunity to present a defense. He also attached and incorporated his letter to the Labor Commissioner, written after the determination by the hearing officer, in which he complained that although he requested a delay, the hearing officer did not respond to the request and proceeded to go forth with the hearing. He claimed in this letter that the hearing officer stripped away his right to defend himself and asked that the Labor Commissioner reverse the determination so as to give him a chance to respond. Appellant asserted in his superior court response that a fair, unbiased rehearing by the Labor Commissioner would demonstrate the invalidity of respondent's allegations.

The relief appellant asked for was a stay of proceedings in order to avoid another uncontested hearing caused by his incarceration. However, the litany of events he described, including the letter to the hearing officer requesting a delay because of his inability to appear at the hearing and the holding of the hearing in his absence in disregard of his request for delay, raise grounds which may support vacation of the determination under Code of Civil Procedure section 1286.2, subdivision (e). Such grounds for relief having been set forth in the response, it is for the superior court to determine whether appellant presented sufficient cause for postponement to the hearing

officer, and whether the refusal to postpone substantially prejudiced appellant's rights.

## VI

### TIMELINESS OF RESPONSE

 Respondent contends that the sworn statement appellant sent to the superior court may not be considered as a response seeking vacation because it was not timely. There are two time limits with which we must be concerned. The first is set forth in Code of Civil Procedure section 1290.6: "A response shall be served and filed within 10 days after service of the petition . . . ." The petition to confirm in this case was personally served on appellant on January 26, 1983. Ten days from that date would be February 5, and appellant's statement was not filed and served until February 7. However, February 5 fell on a Saturday in 1983. Code of Civil Procedure section 12a provides that if the last day required by law for performance of any act falls on a holiday, that period is extended to the next day which is not a holiday; the term "holiday" includes Saturdays and Sundays. The time within which appellant had to file his response was extended to the following Monday, February 7. Appellant's response, filed on February 7, was within the 10-day statutory limit.

 The second time limit is found in Code of Civil Procedure section 1288.2, which provides that a response requesting that an award be vacated be served and filed not later than 100 days after the date of service of a signed copy of the award upon the responding party. The determination of the Labor Commissioner was rendered on April 19, 1982, and served on appellant no later than May 7, 1982. His response in superior court was filed nine months later, well past the 100-day limit for a request to vacate.

To hold appellant to this 100-day requirement, however, would merely emphasize the inability of an incarcerated defendant to exercise his right to be heard in an adversary proceeding. Because of his incarceration, appellant was unable to appear at the hearing and unable to locate and educate counsel to appear on his behalf. His nonappearance and failure to comply with the time requirement for seeking vacation of the award caused the confirmation hearing to proceed as an uncontested matter; confirmation of the award amounted to a default judgment against the appellant. We therefore consider the availability of relief from default based on either statutory or equitable grounds.

 Relief from default may be given under Code of Civil Procedure section 473 if the party seeks such relief within a reasonable time, not to

exceed six months. As already noted, appellant's sworn statement to the superior court which set forth the circumstances causing his failure to appear was filed nine months after rendition of the Labor Commissioner's determination, well past the six-month time limit. Section 473 relief is not available to appellant.

■ One who has been prevented by extrinsic factors from presenting his case to the court may seek equitable relief from the judgment entered against him; this equitable jurisdiction to interfere with final judgments is based upon the absence of a fair, adversary trial in the original action. (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328].) ■ The right to relief has been extended to cases involving extrinsic mistake, which has been found in cases where the complaining party was disabled at the time the judgment was entered. (*Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 471-472 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]; *Olivera* v. *Grace, supra,* 19 Cal.2d 570, 578.) ■ Imprisonment is expressly recognized as a disability which tolls the general statute of limitations in civil actions. (Code Civ. Proc., §§ 328, 352.) Although the time for seeking vacation of the Labor Commissioner's determination does not fall within the general statute of limitations, inasmuch as a different limitation is provided by Code of Civil Procedure section 1288 (see Code Civ. Proc., § 312), imprisonment is just as much of a disability to a party's compliance with a 100-day statute of limitations for seeking vacation as it is to a party's ability to comply with any other statute of limitations. We conclude that appellant was prevented by the extrinsic factor of disability from timely filing his response seeking vacation of the award.

■ The granting of equitable relief requires not only a showing of appellant's satisfactory excuse for not having made his claim or defense in the original action, but also a showing of his diligence in seeking relief after discovery of the facts. (*DeMello* v. *Souza* (1973) 36 Cal.App.3d 79, 85 [111 Cal.Rptr. 274].) ■ In this case, as soon as appellant was served with notice of the petition to confirm and the hearing to be held thereon, he filed his response setting forth all the circumstances leading to his denial of an adversary hearing before the Labor Commissioner; attached to this response were the letter to the hearing officer which requested a delay in order to prevent the holding of the hearing in his absence, and the letter to the Labor Commissioner after the hearing, seeking reversal of the award because he had been unable to appear. His failure to comply with the precise time limits of the Code of Civil Procedure was in effect caused by his disability; in his response he asked the trial court to excuse his ignorance of the proper format in which to seek relief, explaining that the prison law library focuses primarily on criminal law, not civil law. Because of his imprisonment, he was not able to become knowledgeable about the proce-

dural requirements in this action. He also explained his inability to retain counsel to represent him in this matter because it was so complicated, because the materials which could have been utilized for his defense were packed away in storage, and because he was allowed limited phone calls while incarcerated. Considering these factors, we find appellant was diligent in seeking relief in the trial court.

■ There is in addition a general rule applicable to equitable relief that equity will not interfere with a judgment which is unjust unless it appears that the one whose interests were infringed can present a meritorious case; this does not require an absolute guarantee of victory; it is enough if the party pleads facts from which it can be ascertained that he has a sufficiently meritorious claim or defense to entitle him to a trial of the issue at a proper adversary proceeding. (*Olivera* v. *Grace, supra,* 19 Cal.2d 570, 578-579.)

■ In his response in the superior court, which incorporated his letters to the hearing officer and to the Labor Commissioner, appellant provided sufficient factual basis upon which the court might conclude he had been improperly denied a postponement of the hearing before the Labor Commissioner, thus entitling him to vacation of that determination. Moreover, he stated in his letter to the hearing officer that he wished to call as witnesses at such hearing studio executives, casting directors and other industry people who would testify to his manner of operation and confirm that neither he nor the corporation acted as talent agencies in violation of the Labor Code, thus establishing that the denial of a proper adversary hearing had indeed prevented him from presenting a potentially meritorious defense.

We conclude that appellant's failure to timely file his response seeking vacation of the Labor Commissioner's determination because of the disability of imprisonment to be excusable mistake; that he acted diligently in seeking relief from the court once he became aware of the need to act; that the defense he seeks to present has potential merit. In light of these conclusions, we find this to be an appropriate case for the exercise of the inherent equitable power of the court to relieve appellant from default caused by his failure to file response seeking vacation of the Labor Commissioner's award within 100 days. That request shall be deemed to have been timely filed in the superior court.

### DISPOSITION

As to appellant MarGil, the judgment is affirmed. As to appellant Cabot, the trial court's order granting the petition to confirm the determination of the Labor Commissioner is reversed and the matter is remanded to the trial court with directions to conduct a full adversary hearing to consider appel-

lant's response seeking vacation of the award as well as respondent's petition seeking confirmation of the award.

Thompson, J., and Johnson, J., concurred.

A petition for a rehearing was denied December 11, 1985, and appellants' petition for review by the Supreme Court was denied February 26, 1986.